# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **E.G., A.G., and B.G.**

**No. 19-0659** (Kanawha County 19-JA-101, 19-JA-102, and 19-JA-103)

**FILED**
**April 28, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father R.G., by counsel Edward Bullman, appeals the Circuit Court of Kanawha County's July 2, 2019, order terminating his parental rights to E.G., A.G., and B.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Jennifer R. Victor, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights instead of imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2019, the DHHR filed an abuse and neglect petition after receiving a referral that petitioner was "seen walking around in the street in his underwear and appeared incoherent when the children were being dropped off by the bus from school" and was "often seen walking up and down the road in [the community] looking sickly, 'beat up,' and [with] sores on his face." The petition further alleged that petitioner was involved in drug manufacturing and committed substance abuse and domestic violence in front of the children. It also alleged educational neglect, and that he failed to protect the children from the presence of a registered sex offender. In February

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

of 2019, the circuit court held a preliminary hearing and found reasonable cause to believe the children were abused and neglected and that petitioner's home was unsafe for the children.[2]

In April of 2019, the circuit court held an adjudicatory hearing where the DHHR sought the termination of petitioner's parental rights. At the hearing, a DHHR employee testified to many of the allegations in the petition, including that the children disclosed petitioner stabbed the walls of the residence with knives when he would get angry and used methamphetamine in front of them. The DHHR employee also testified to interviewing petitioner and witnessing missing parts of the wall in his bedroom as well as a visible methamphetamine pipe. Further, the DHHR employee testified that petitioner admitted to using methamphetamine in the children's presence but denied it was a problem because he did not allow them to use the controlled substance. Petitioner testified at the hearing and admitted to using methamphetamine "occasionally," but denied the children had ever witnessed it. Petitioner further testified that the children lied about him stabbing walls in the residence but acknowledged he had been involuntarily hospitalized on at least two separate occasions. After the presentation of evidence, the circuit court found by clear and convincing evidence that the children were abused and neglected because of petitioner's drug abuse and untreated mental health issues. The circuit court further found that petitioner committed "educational neglect" and "failed to protect the children from domestic violence in the home." Accordingly, in its adjudicatory order, the circuit court found petitioner to be an abusing parent. The circuit court ordered that petitioner could not exercise supervised visits unless he stayed drug free as confirmed by random drug screens.

In May of 2019, the circuit court held a dispositional hearing. At the hearing, the circuit court admitted a drug screen from April 12, 2019—the day of petitioner's adjudicatory hearing— where petitioner tested positive for amphetamine, methamphetamine, and marijuana. The DHHR moved for the termination of petitioner's parental rights because of his continued substance abuse problem and refusal to enter an inpatient treatment program. According to a DHHR employee who testified, petitioner attended a multidisciplinary team meeting, admitted he was high at the hearing, and refused to participate in an intake performed at a local hospital. According to the employee, petitioner maintained he did not have a substance abuse problem and believed there was a difference between "substance abuse and substance use." In response to questioning from the circuit court, petitioner admitted he continued to use methamphetamine and would "probably" test positive at the dispositional hearing. Based on this evidence, the circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect, given that petitioner had "habitually abused or is addicted to . . . controlled substances and/or drugs to the extent that proper parenting skills have been seriously impaired" and failed to "respond[] or follow[] through with a reasonable case plan or other rehabilitative efforts." The circuit court further found that petitioner "demonstrated an inadequate capacity to solve the problems of child abuse and neglect on his own, or with help" and that termination of petitioner's parental rights was in the children's best interests. Accordingly, the circuit court terminated his parental rights to the children.[3] It is from the dispositional order that petitioner appeals.

---

[2]Petitioner did not appear at the hearing but was represented by counsel.

[3]The children's mother is a nonabusing parent, and the children have achieved permanency in her care.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in terminating his parental rights without giving him additional time to participate in an improvement period. While petitioner acknowledges his "parenting was affected by his substance abuse and mental illness," he argues the "short duration of th[e] proceedings . . . was insufficient time . . . to recognize and treat these two underlying conditions interfering with his ability to parent," especially considering the extended period he exercised custody of the children prior to the petition's filing. Petitioner further argues he had "begun to cooperate" by "participating in the proceedings and drug screening." In light of this, he argues that the circuit court should have "allowed him additional time to determine if . . . his addiction and mental illness could be treated." We disagree.

To the extent petitioner argues that the circuit court should have granted him an improvement period, we note that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); syl. pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . .").

In terminating petitioner's parental rights, the circuit court specifically found that petitioner "demonstrated an inadequate capacity to solve the problems of child abuse on his own, or with help." This is largely because of petitioner's lack of acknowledgment of his problems, and refusal to follow through with a "reasonable family case plan or other rehabilitative efforts." Indeed, the record establishes that petitioner not only refused to acknowledge the conditions of abuse and neglect below—at one point claiming his own children were lying—but objected to the imposition of services, other than drug screens, designed to correct those conditions. While it may be true that petitioner is now attempting to acknowledge struggling with substance abuse, he previously flatly denied such abuse, even when confronted with positive drug screens and other evidence. Indeed, petitioner showed a blatant disregard for the court proceedings altogether by appearing at a

3

multidisciplinary team meeting while under the influence, testing positive for multiple controlled substances on the date of his adjudicatory hearing, and admitting he would "probably" test positive at his final dispositional hearing. Additionally, petitioner refused to avail himself of the DHHR's services at nearly every point in the proceedings.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Further, we have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Given petitioner's failure to acknowledge his drug addiction and how his actions constituted abusive and neglectful behavior, the granting of an improvement period would have been futile. While petitioner argues that nothing precluded the circuit court from granting him an improvement period in this case, there is no evidence that he would comply with an improvement period. Accordingly, we find no error in the circuit court's denial of his motion.

Next, petitioner alleges that the circuit court should have imposed a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(b)(5); however, the same evidence set forth above supports the termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. Additionally, under West Virginia Code § 49-4-604(c)(1), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning.

With these parameters in mind, the record clearly supports the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of neglect, given his untreated drug addiction and refusal to seek treatment. While it is true that petitioner may

be able to undergo some treatment in the future for his substance abuse, such possible improvement was based on pure speculation. Indeed, petitioner denied that he had a substance abuse problem on several occasions and denied all offers of assistance to him during the proceedings. Despite this, petitioner claims that he should have been granted a less-restrictive disposition because he might eventually be able to correct the conditions of abuse and neglect, but we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted).

While petitioner argues that the circuit court should have employed a less-restrictive dispositional alternative, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, as the circuit court's findings are fully supported by the record below, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 2, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 28, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

5